**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Bruce SHIELDS, Respondent.**

No. 90SC678.

Supreme Court of Colorado, En Banc.

Dec. 9, 1991.

Rehearing Denied Jan. 13, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted the People's petition for certiorari to review the decision of the Colorado Court of Appeals in *People v. Shields*, 805 P.2d 1140 (Colo.App.1990), in which the court overturned the first-degree sexual assault conviction of the defendant, Bruce Timothy Shields. The court of appeals held that the instruction given at trial on the offense of second-degree sexual assault was infirm because it did not clearly distinguish between that crime and first-degree sexual assault. The court also held that the trial court's failure to respond to a question submitted by the jury during deliberations, by clarifying the instruction so that the jury could adequately distinguish between first- and second-degree sexual assault, constituted plain error. *Id.* at 1143–44. We reverse in part,[1] and direct that the defendant's conviction for first-degree sexual assault be reinstated.

I.

After trial to a jury in Denver District Court, the defendant was found guilty of second-degree burglary[2] and first-degree sexual assault.[3] The court sentenced him to twelve years in prison for each count and directed that the sentences run concurrently. The defendant appealed, and the Colorado Court of Appeals affirmed the burglary conviction but reversed the conviction for first-degree sexual assault. On

---

1. As noted in part I of this opinion, the defendant was also convicted of second-degree burglary, and the court of appeals affirmed. The validity of the second-degree burglary conviction is not at issue on certiorari review, so the part of the judgment of the court of appeals affirming that conviction remains undisturbed.

2. § 18–4–203, 8B C.R.S. (1986).

3. § 18–3–402(1), 8B C.R.S. (1986).

certiorari review we address only the validity of the first-degree sexual assault conviction.

Evidence presented at trial indicates that the convictions arose out of the following events. In the early morning hours of September 12, 1987, the defendant entered the second-floor bedroom of the sleeping sixteen-year-old female victim through her bedroom window. The victim testified that she awoke to find the defendant "over" her with his hand covering her mouth. She stated that the defendant held her down and penetrated her digitally. While still restraining her, he then performed oral sex on her. She testified that she was able to get away from the defendant when he moved to position his body between her legs, ostensibly to engage in sexual intercourse, and temporarily let go of her. The defendant's version of the events is similar as to the sexual conduct in which he engaged. However, as presented in his counsel's closing argument, he contends that the victim consented to "everything except intercourse" and that when she told him that she did not want to engage in intercourse, he stopped and left.[4]

The trial court instructed the jury with respect to the offenses of first- and second-degree sexual assault. These instructions were based on the Colorado pattern jury instructions for these offenses. CJI–Crim. 12:01 and 12:05. The defense counsel specifically stated that she did not object to these instructions.[5] During deliberations, the jury requested further explanation of the difference between first- and second-degree sexual assault. The judge, after consulting with the prosecution and defense counsel and receiving their acknowledgments that they had no objection, referred the jury back to the instructions as originally given.[6] The jury found the defendant guilty of first-degree sexual assault. The court of appeals reversed the resulting conviction, but offered the prosecution the option of retrying the defendant or accepting entry of a judgment of conviction for second-degree sexual assault.

We granted certiorari to address two issues:

Whether the Court of Appeals erred in holding that the pattern jury instructions on first and second degree sexual assault are inadequate.

Whether it was plain error for the trial court to respond to the jury's inquiry regarding the difference between first and second degree sexual assault by referring it back to the instructions.

We hold that the second-degree sexual assault instruction given at trial was deficient but that this deficiency, even when coupled with the trial court's error in failing to clarify for the jury the distinction between first- and second-degree sexual assault, did not rise to the level of plain error.

## II.

We first must determine whether the second-degree sexual assault instruction given at trial adequately informed the jury

---

4. The defendant did not testify at trial. He did give a written statement to police officers after the incident, and that statement was received in evidence. The statement provided part of the basis for his counsel's argument concerning consent.

5. The defense counsel did object to the court's refusal to give an instruction on third-degree sexual assault. The propriety of that ruling is not at issue on certiorari review.

6. The jury's written inquiry contained two questions:
   1. Could we have further definition of the difference between 1st & 2nd degree sex assalt [sic]?
   2. If there were no "intercourse," can there still be first degree sexual assault?
   The judge responded in writing as follows:

MEMBERS OF THE JURY:
   In response to your first question regarding the difference between 1st and 2nd degree sexual assault, I can only refer you to the instructions.
   The answer to your second question can be found by applying the definitions in Instruction Number 17 to the elements of 1st degree sexual assault in Instruction Number 12.
   While, in an effort to respond to your question, the Court has referred to specific instructions, this response is not intended to highlight or give greater importance to any particular instructions.
The defendant does not contend that the answer to the second question was erroneous or otherwise inadequate.

of the law pertaining to that offense. Because the offenses of first- and second-degree sexual assault are definitionally interrelated, we must consider the statutes and instructions concerning both offenses in order to resolve this issue. Section 18-3-402(1), 8B C.R.S. (1986), defines the crime of first-degree sexual assault and states that:

> Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault in the first degree if:
>
> (a) The actor causes submission of the victim through the actual application of physical force or physical violence; or
>
> (b) The actor causes submission of the victim by threat of imminent death, serious bodily injury, extreme pain, or kidnapping, to be inflicted on anyone, and the victim believes that the actor has the present ability to execute these threats; or
>
> (c) The actor causes submission of the victim by threatening to retaliate in the future against the victim, or any other person, and the victim reasonably believes the actor will execute this threat. As used in this paragraph (c), "to retaliate" includes threats of kidnapping, death, serious bodily injury, or extreme pain; or
>
> (d) The actor has substantially impaired the victim's power to appraise or control the victim's conduct by employing, without the victim's consent, any drug, intoxicant, or other means for the purpose of causing submission; or
>
> (e) The victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented.

Section 18-3-403(1) defines second-degree sexual assault. It states in pertinent part that:

> Any actor who knowingly inflicts sexual penetration or sexual intrusion on a victim commits sexual assault in the second degree if:
>
> (a) The actor causes submission of the victim to sexual penetration by any means *other than those set forth in section 18-3-402*, but of sufficient consequence reasonably calculated to cause submission against the victim's will; or
>
> (b) The actor causes submission of the victim to sexual intrusion by any means *other than those set forth in section 18-3-402*, but of sufficient consequence reasonably calculated to cause submission against the victim's will ....

(Emphasis added.)

The evidence of the defendant's conduct was sufficient to support a finding that he had accomplished both sexual intrusion, as defined in section 18-3-401(5), and sexual penetration, as defined in section 18-3-401(6). If sexual intrusion or penetration is accomplished by causing the victim's submission through physical force or violence, or by some other means described in section 18-3-402(1), the perpetrator is guilty of sexual assault in the first degree. However, if sexual intrusion or penetration is achieved by a means not described in section 18-3-402(1) but "of sufficient consequence reasonably calculated to cause submission against the victim's will," then the perpetrator is guilty of sexual assault in the second degree. § 18-3-403(1)(a), (b). That much is clear. What is less well delineated is how an offense should be categorized when a combination of various means, taken together, results in submission of the victim but no one means is the sole factor causing submission.

In resolving this uncertainty, our task is to discern the intent of the legislature. *E.g.*, *Bynum v. Kautzky*, 784 P.2d 735, 737 (Colo.1989). We are confident from a reading of the detailed provisions of the statutes that the overall goal of the legislature was to achieve a unified set of statutory principles adequate to address serious sexual misconduct in all of its various manifestations. *Cf.* § 2-4-201(1)(c), 1B C.R.S. (1980) (in enacting a statute, it is presumed that a just and reasonable result is intended); § 2-4-203(1)(a), (e) (in determining legislative intent in enacting an ambiguous statute, a court may consider the object sought to be attained and the consequences of a particular construction). The legislative history that we have reviewed,

although copious, does not contain helpful guidance on the question of how the statutes are to be applied when a victim's submission is caused by a combination of means. We are satisfied, however, that the statutory construction outlined in the following paragraphs will best effectuate the legislative intent to adopt a comprehensive set of statutory provisions addressing serious sexual misconduct.

We construe these statutes to provide that if submission of the victim is caused by any of the means described in section 18–3–402(1), taken singly or in combination, the crime is first-degree sexual assault. In determining whether second-degree sexual assault has occurred, sections 18–3–403(1)(a) and (b) require that the means utilized be other than those set forth in section 18–3–402. This excludes, for example, the application of physical force that proves, in itself, sufficient actually to cause submission. *See* § 18–3–402(1)(a). However, it does not exclude consideration of the application of physical force that proves insufficient to cause submission. In such a situation, physical force can be considered under section 18–3–403(1) if it combines with some means other than those set forth in section 18–3–402(1), and taken together, the actions are of sufficient consequence reasonably calculated to cause submission against the victim's will. That is, the second-degree sexual assault statute's exclusion of means set forth in the first-degree sexual assault statute is not meant to exclude consideration of particular means set forth in section 18–3–402(1) unless those means, taken singly or in combination, actually cause the submission of the victim.[7] (In the latter event, the crime is first-degree, not second-degree, sexual assault.) Any other construction of the statutes would permit various combinations of serious sexual misconduct to take place without criminal penalty. We cannot ascribe such an intent to the legislature.

As so construed, second-degree sexual assault is not a lesser included offense of first-degree sexual assault. "A lesser offense is included within a greater offense when the establishment of the essential elements of the greater offense necessarily establishes all the elements required to prove the lesser offense." *People v. Nhan Dao Van,* 681 P.2d 932, 934 (Colo.1984); *see also* § 18–1–408(5), 8B C.R.S. (1986) (setting forth criteria for determining whether an offense is included in a charged offense). In order to determine whether an offense is lesser included, the elements of the two offenses as set forth in the relevant statutes must be compared. *People v. Chapman,* 192 Colo. 322, 324, 557 P.2d 1211, 1213 (1977); *accord People v. Rivera,* 186 Colo. 24, 26, 525 P.2d 431, 433 (1974). Second-degree sexual assault never can result solely from a combination of means described in the first-degree sexual assault statute. Second-degree sexual assault requires some means of causing, or contributing to causing, the victim's submission that is different in kind from the means specified in the first-degree sexual assault statute but essential to causing the submission of the victim. Establishment of the elements of first-degree sexual assault, therefore, can never establish all of the elements required to prove second-degree sexual assault. We therefore hold that under this statutory scheme the offenses of first- and second-degree sexual assault are mutually exclusive. To the extent that this holding conflicts with *People v. Silburn,* 807 P.2d 1167 (Colo.App.1990), which held that second-degree sexual assault is a lesser included offense of the crime of first-degree sexual assault, we overrule that case.

A person charged only with first-degree sexual assault, however, can be entitled to an instruction on second-degree sexual assault as a lesser nonincluded offense if the evidence warrants. Before an instruction

---

7. The court of appeals directed that in the event of retrial, the instruction for second-degree sexual assault should specifically direct the jury not to consider means of causing the victim's submission described in the first-degree sexual assault instruction. *Shields,* 805 P.2d at 1144. To the extent that this would preclude the jury from considering a degree of physical force or violence insufficient in itself to cause submission of the victim in determining whether the defendant committed second-degree sexual assault, we disapprove the suggested instruction.

on a lesser nonincluded offense may be submitted to the jury, "there must be some evidence in the record to rationally support a conviction on the lesser offense. Rational support in the record means that a jury reasonably could acquit the defendant of the offense charged and simultaneously find him guilty of the lesser nonincluded offense." *People v. Aragon*, 653 P.2d 715, 720 n. 5 (Colo.1982); *see also Rivera*, 186 Colo. at 28–29, 525 P.2d at 434.

Having in mind the foregoing statutory construction and law concerning submission of lesser nonincluded offenses to the jury, we must now consider the adequacy of the jury instructions on first- and second-degree sexual assault. The defendant was charged with "causing submission of [the victim], through the actual application of physical force and physical violence," conduct proscribed by section 18–3–402(1)(a) of the first-degree sexual assault statute. He was not charged under any other subsection of that statute.

At trial, the court gave an instruction on first-degree sexual assault providing, in pertinent part:

The elements of Sexual Assault in the First Degree are:

(1) That the defendant,

(2) in the City and County of Denver, State of Colorado on or about September 12, 1987,

(3) knowingly,

(4) inflicted sexual intrusion or sexual penetration on [the victim], and

(5) caused submission of [the victim],

(6) through the actual application of physical force or physical violence,

(7) without the affirmative defense of consent set forth in Instruction No. 10.

The court also instructed the jury on second-degree sexual assault, stating in pertinent part:

If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is nec-

essarily included in the offense charged if the evidence is sufficient to establish his guilt of the lesser offense beyond a reasonable doubt.

The offense of Sexual Assault In The First Degree against [the victim], as charged in the information in this case necessarily includes the lesser offense of Sexual Assault In The Second Degree.

The elements of Sexual Assault In The Second Degree are:

(1) That the Defendant,

(2) in the City and County of Denver, State of Colorado, on or about September 12, 1987,

(3) knowingly inflicted sexual penetration or sexual intrusion on a person, and

(4) caused submission of that person

(5) by any means of sufficient consequence to reasonably cause submission against the victim's will,

(6) reasonably calculated to cause submission against that person's will,

(7) without the affirmative defense of consent as set forth in Instruction No. 10.[8]

■ This latter instruction does not inform the jury that second-degree sexual assault under §§ 18–3–403(1)(a) and (b) encompasses only those situations where it finds that the defendant caused the victim to submit by means other than those enumerated in the first-degree sexual assault statute. Sections 18–3–402, –403. Rather than treating the two offenses as mutually exclusive, the instructions give the impression that second-degree sexual assault includes all situations where means of sufficient consequence to overcome the will of the victim are employed, and that first-degree sexual assault occurs only when the means employed was physical force or physical violence. In essence the instructions treat first-degree sexual assault crimes as a subset of the larger group of crimes that constitute second-degree sexual assault. This is not the law. The second-degree sexual assault instruction should have informed the jury that the means of

---

8. No issue concerning the sufficiency of the evidence to support an instruction on second-

degree sexual assault is presented on this certiorari review.

causing submission necessary to convict a defendant of second-degree sexual assault must include one or more means that are exclusive of those specified in the instruction on first-degree sexual assault, as more particularly explained above. Since the second-degree sexual assault instruction here did not explain this important distinction, it was inadequate.[9]

### III.

We must determine next whether the trial court also erred in its response to the jury's inquiry concerning the difference between first- and second-degree sexual assault. In *Leonardo v. People*, 728 P.2d 1252, 1256 (Colo.1986), we held that "when the jury indicates to the judge that it does not understand an element of the offense charged or some other matter of law central to the guilt or innocence of the accused, the judge has an obligation to clarify that matter for the jury in a concrete and unambiguous manner." *Accord Sanchez v. People*, 820 P.2d 1103, 1105–1106 (Colo. 1991); *see People v. Alexis*, 806 P.2d 929, 931–32 (Colo.1991). The *Leonardo* holding was largely based on the American Bar Association Standards for Criminal Justice 15–4.3(a) (ABA *Standards for Criminal Justice* ) concerning the proper response by a trial court to a jury request for clarification of instructions. Standard 15–4.3(a) states:

> If the jury, after retiring for deliberation, desires to be informed on any point of law, they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request unless:
>
> (i) the jury may be adequately informed by directing their attention to some portion of the original instructions;
>
> (ii) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or

(iii) the request would call upon the judge to express an opinion upon factual matters that the jury should determine.

We recently relied on that same standard in *Sanchez* in evaluating the sufficiency of a trial court's response to a question submitted by a jury during deliberations.

■ The trial court erred by referring the jury back to the original instructions when it requested further explanation of the distinction between first- and second-degree sexual assault. Standard 15–4.3(a)(i) indicates that the jury should be referred back to the original instructions only when those instructions will adequately answer its question. As discussed above, the original instruction on second-degree sexual assault was infirm because it failed to point out the distinction between first- and second-degree sexual assault. Thus, the instructions would not have resolved the question posed by the jury. Neither are the remaining exceptions to a trial court's duty to clarify instructions in response to jury inquiries applicable here. The jury's request concerned the distinction between two offenses for which the defendant could have been convicted, and therefore it was relevant to the law of the case. In addition, the question did not require the judge to express an opinion on the facts of the case. *See* ABA *Standards for Criminal Justice* 15–4.3(a)(ii), (iii).

### IV.

■ Next, we must determine whether the erroneous instruction on second-degree sexual assault, and the failure to advise the jury of the distinction between first- and second-degree sexual assault when it specifically inquired, necessitate that the defendant's conviction for first-degree sexual assault be overturned. When the error asserted on appeal is not objected to at trial, Crim.P. 52(b) requires that an appellate court utilize a plain error standard of review.[10] *Wilson v. People*, 743 P.2d 415,

---

9. The first-degree sexual assault instruction was sufficient. The defendant was charged with causing the victim to submit through the actual application of physical force and physical violence. The instruction correctly sets forth the elements necessary to establish the charged offense.

10. The court of appeals held that the doctrine of invited error did not preclude review of the defendant's first-degree sexual assault convic-

419 (Colo.1987). The defendant made no objection to the second-degree sexual assault instruction as originally given by the trial court. Moreover, when the jury inquired into the distinction between first- and second-degree sexual assault, the defendant's counsel specifically responded that she did not object to the trial court's decision to refer the jury back to the initial instructions.

"[T]he appropriate standard for plain-error review is whether an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.* at 420. It is also true that "[e]ach case in which it is alleged that plain error has been committed must be resolved in light of its particular facts and the law that applies to those facts." *Ramirez v. People,* 682 P.2d 1181, 1183 (Colo.1984). Employing these standards, we conclude that the errors committed by the trial court in not properly instructing the jury on the offense of second-degree sexual assault, and in failing to correct the inadequate instruction upon a jury request for clarification, did not rise to the level of plain error.

The jury in this case convicted the defendant of first-degree sexual assault. In order to conclude that the defendant was guilty of this offense, the jury had to find that all of the elements set forth in the first-degree sexual assault instruction were present. The defendant does not contend that the first-degree sexual assault instruction was inadequate, and we are satisfied that it clearly and correctly sets forth the applicable law. The evidence does not suggest that the jurors' confusion about the distinction between first- and second-degree sexual assault impaired its ability to assess the evidence in terms of the first-degree sexual assault instruction. Therefore, we presume that the jury understood and followed the trial court's instructions

on this offense. *See People v. Moody,* 676 P.2d 691, 697 (Colo.1984).

Even more importantly, the erroneous instruction given in this case actually operated to the defendant's benefit. The instruction failed to distinguish between first- and second-degree sexual assault as was required by the statutory definitions of these offenses. By reference back to the original instructions, the jury was led to believe that second-degree sexual assault included all instances of first-degree sexual assault as charged in this case so that second-degree sexual assault was the greater offense and first-degree sexual assault the lesser included offense. Under this instruction the jury could have found the defendant guilty of second-degree sexual assault when he in fact committed first-degree sexual assault. Not only did the instructional error committed here not prejudice the defendant, it inured to his benefit. We therefore find no plain error. *See People v. Bossert,* 722 P.2d 998, 1009 n. 20 (Colo.1986); *People v. Mack,* 638 P.2d 257, 267 (Colo.1981).

We hold that the trial court erred in instructing the jury on second-degree sexual assault and in not clarifying the distinction between first- and second-degree sexual assault when the jury requested such clarification. However, since the jury was correctly instructed on first-degree sexual assault and the errors inured to the benefit of the defendant, the errors do not rise to the level of plain error and his conviction for first-degree sexual assault must be reinstated.

We reverse that part of the judgment of the court of appeals overturning the defendant's first-degree sexual assault conviction and remand the case to that court with directions to reinstate the trial court's judgment of conviction for that offense.

---

tion in this case even though the defendant tendered instructions on first- and second-degree sexual assault substantially the same as

those given by the court. The People did not seek certiorari review of this issue, and we express no opinion concerning it.