22CA1354 Peo v Gentry 07-11-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1354 Morgan County District Court No. 21CR225 Honorable Stephanie M.G. Gagliano, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Ronald Wayne Gentry, Defendant-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division A Opinion by CHIEF JUDGE ROMÁN Graham* and Richman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 11, 2024 Philip J. Weiser, Attorney General, Brittany Limes Zehner, Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Julieanne Farchione, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023.
1 ¶ 1 Defendant, Ronald Wayne Gentry, appeals the judgment of conviction entered after a jury found him guilty of felony menacing. We reverse and remand for further proceedings. I. Background ¶ 2 Gentry visited his mother, Vita, to repair her security cameras. At the same time, Vita’s neighbor was installing a privacy fence with the help of J.K., a second neighbor. Vita and J.K. began arguing. ¶ 3 Gentry intervened and he and J.K. threatened each other. J.K. held posthole diggers during the confrontation. After that, Gentry crossed his mother’s yard and retrieved a gun from his car. According to J.K., Gentry “racked a round” and pointed the gun at him. J.K. fled and called the police. ¶ 4 When officers arrived, they arrested Gentry, advised him of his Miranda rights, and ultimately charged him with felony menacing. After a jury trial, Gentry was convicted as charged. ¶ 5 On appeal, Gentry contends that (1) the district court reversibly erred when it permitted the prosecutor to use his post-Miranda silence as substantive evidence of guilt; (2) the district court reversibly erred by failing to declare a mistrial after prejudicial testimony from a police sergeant came in; (3) the district court 
2 improperly allowed expert testimony from J.K. regarding what he learned in his concealed carry class; and (4) prosecutorial misconduct deprived him of his due process right to a fair trial by an impartial jury. ¶ 6 We agree with Gentry’s first contention concerning his post-Miranda silence and, therefore, reverse and remand for a new trial. Because it is unlikely his other contentions will arise on remand, we decline to address them. II. Evidence and Comments on Gentry’s Post-Miranda Silence ¶ 7 Gentry contends that the district court reversibly erred when it permitted the prosecutor to cross-examine him about, and comment in closing argument on, his post-Miranda silence. We agree. A. Standard of Review and Applicable Law ¶ 8 We review de novo whether a prosecutor’s references to a defendant’s post-Miranda silence violate their due process rights. People v. Castro, 2022 COA 101, ¶ 20 (citing United States v. Caruto, 532 F.3d 822, 827 (9th Cir. 2008)). Where, as here, the issue is unpreserved, we reverse only if plain error occurred. Hagos v. People, 2012 CO 63, ¶ 14. 
3 ¶ 9 An error is plain if it is obvious and substantial. Id.; see also Crim. P. 52(b). It is obvious if it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. Scott v. People, 2017 CO 16, ¶ 16. An error is substantial if it “so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.” Hagos, ¶ 14 (quoting People v. Miller, 113 P.3d 743, 750 (Colo. 2005)). ¶ 10 Before conducting a custodial interrogation of a suspect, police must inform the suspect “that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.” Miranda v. Arizona, 384 U.S. 436, 444 (1966); see also People v. Bonilla-Barraza, 209 P.3d 1090, 1094 (Colo. 2009). If the suspect “indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.” Miranda, 384 U.S. at 473–74; see also People v. Arroya, 988 P.2d 1124, 1131 (Colo. 1999). ¶ 11 The prosecution can neither present evidence of, nor comment on, a defendant’s post-Miranda silence. See Griffin v. California, 
4 380 U.S. 609, 613–15 (1965); People v. Ortega, 198 Colo.179, 182–
84 (1979). But not every reference to a defendant’s post-Miranda silence warrants reversal. “To determine whether a prosecutor’s comment on the defendant’s silence constitutes reversible error, we should consider ‘(1) whether the improper remarks were used as a means of creating an inference of guilt; and (2) whether the prosecution argued that the defendant’s silence constituted an implied admission of guilt.’” People v. Davis, 312 P.3d 193, 198–99 (Colo. App. 2010) (quoting People v. Hall, 107 P.3d 1073, 1078 (Colo. App. 2004)), aff’d, 2013 CO 57. B. Additional Facts ¶ 12 A police officer arrested Gentry and advised him of his right to remain silent pursuant to Miranda. After a short interaction with the officer, Gentry exercised his right to remain silent and made no further statements. ¶ 13 At trial, on cross-examination, the prosecutor asked Gentry a series of questions. After discussing the incident, the prosecutor asked, “And [the police officer] comes along and she interviews you and you don’t say any of that to her?” ¶ 14 Gentry’s testimony proceeded as follows: 
5 GENTRY: I was waiting for questions. I, again, have never been in that situation before. I didn’t . . . . Sorry. Never been in that situation before. I didn’t know what to expect. PROSECUTOR: Okay. Mr. Gentry, you’re a school teacher, correct? GENTRY: Correct. . . . . PROSECUTOR: So as a teacher you know that if there’s information that would help somebody assess a situation the best rule of thumb is to give up that information; is that right? GENTRY: Again, I wasn’t thinking. I was scared. And I have never been in that situation with the police before. I didn’t know how it worked. PROSECUTOR: Okay. And that’s understandable. But you’re sitting in the back of a patrol car with your hands behind you in handcuffs having an officer Mirandize you. As a teacher, as somebody who knows the best . . . rule of thumb is to give information that will help somebody make a better assessment of the situation would it have been prudent of you to say, but, Officer, there’s a couple of other things that you should know that I’m not telling because I’m really nervous? Can I have a second to talk to you some more? Wouldn’t that have been a good idea? GENTRY: When I was told that there was three witnesses who said that I pointed a gun at him 
6 that’s when I realized that it didn’t matter what I said. PROSECUTOR: But, Mr. Gentry, you know that you did nothing wrong? GENTRY: Correct. PROSECUTOR: So fifteen eyewitnesses wouldn’t have mattered because you knew the truth, right? GENTRY: Correct. PROSECUTOR: So because you knew the truth that was the time to say I don’t care if you’ve got three or fifteen eye witnesses I know what happened and let me tell you what happened. GENTRY: At that point in time it wasn’t going to matter and I figured that my best course of action was to wait until I could get with a lawyer. ¶ 15 The prosecutor stayed with this message in the closing argument to the jury: Why didn’t [Gentry] tell [the police] all of these things eight minutes after it happened? Eight minutes. . . . [H]e didn’t do anything wrong according to him. He did absolutely nothing wrong. Why couldn’t he have told her exactly what happened? It’s fresh in his memory right then and there. Why not tell her absolutely everything that happened? ¶ 16 Even during rebuttal argument, the prosecutor persisted with this line of attack by asserting that “[t]here were many 
7 inconsistencies between what [Gentry] said to [the police officer] and what he said on the stand. He had a very long involved explanation on the stand. A very short explanation to [the police officer].” C. The Prosecutor Improperly Referred to Gentry’s Post-Miranda Silence ¶ 17 The prosecutor’s line of questioning and comments regarding Gentry’s post-Miranda silence were intended to suggest Gentry’s guilt. The essence of the questioning was that, if Gentry really knew the facts that exonerate him, as he testified to at trial, he surely would have told police on the scene. However, Gentry had chosen to exercise his right to remain silent at some point during his discussion with the officer, at which point the prosecution was not free to talk about his post-Miranda silence to infer guilt. But that’s exactly what the prosecutor did by suggesting that Gentry should have discussed the circumstances that led to his arrest in more detail with the officer even after he chose to exercise his constitutional right to remain silent. See People v. Hardiway, 874 P.2d 425, 427 (Colo. App. 1993) (“Prosecutorial comment that creates an inference of guilt by referring to the defendant’s silence 
8 during custodial interrogation effectively penalizes the defendant for exercising a constitutional privilege.”). ¶ 18 We reject the People’s assertion that the cross-examination and closing argument were proper impeachment of Gentry’s statements to the police before he exercised his Miranda right to silence. A defendant’s exercise of his right to silence is not considered an “omission” that may be impeached. See id.; cf. People v. Quintana, 665 P.2d 605, 610 n.7 (Colo. 1983) (citing Anderson v. Charles, 447 U.S. 404 (1980)). ¶ 19 Here, Gentry’s limited post-Miranda statements to the police were consistent with his trial testimony and “merely augment[ed]” his original statements to police. Hardiway, 874 P.2d at 428 (concluding that defendant’s post-Miranda statements or subsequent silence were not impeachable where the defendant’s testimony elaborated on, but did not contradict, her limited post-Miranda statements to police). Accordingly, Gentry’s initial volunteered statements did not operate to waive his right to silence or authorize the prosecutor’s cross-examination regarding any details that he omitted after invoking that right. See id. (because defendant’s more elaborate trial testimony merely augmented his 
9 initial statement, the details omitted from the prior statement were not sufficiently inconsistent to be admitted for impeachment purposes). ¶ 20 Having concluded that allowing the prosecutor’s cross-examination and statements was error, we must still decide whether the error was plain. We conclude that it does rise to the level of plain error. D. Plain Error ¶ 21 The error was obvious because the case law disallowing the prosecution’s use of a defendant’s post-Miranda silence is well settled.
1 See Hall, 107 P.3d at 1077 (“It is well established that the prosecution may not refer to a defendant’s exercise of his right to remain silent.”); see also People v. Coleman, 2018 COA 67, ¶ 35 1 While Gentry relies heavily on People v. Castro, 2022 COA 101, we begin by noting that we will not rely on Castro for a plain error analysis because it was decided after Gentry was convicted. See People v. Crabtree, 2024 CO 40, ¶ 6; see also People v. Thompson, 2018 COA 83, ¶ 34 (because the error must be obvious, “we only consider the status of the law at the time of the trial”), aff’d, 2020 CO 72. And, contrary to the People’s assertion, Castro did not “unsettle” the law regarding post-Miranda silence; it clarified and was consistent with People v. Hardiway, 874 P.2d 425, 427 (Colo. App. 1993), and its progeny. 
10 (“[T]he law prohibiting use of post-arrest silence as substantive evidence of guilt was settled.”). ¶ 22 The error was also substantial. The cross-examination regarding Gentry’s silence was not fleeting, and the prosecution repeated the inference that Gentry should have spoken with police after the incident in the opening statement as well as during closing and rebuttal arguments. Cf. Coleman, ¶ 36. ¶ 23 Moreover, the evidence against Gentry was not overwhelming. The trial primarily focused on conflicting testimony from a witness favorable to Gentry, J.K., and Gentry. The prosecution’s improper questions and comments attacked Gentry’s post-Miranda silence to undermine his credibility. This undermined the fundamental fairness of a trial that essentially boiled down to the credibility of Gentry and J.K. III. Other Contentions ¶ 24 In light of this disposition, we decline to address Gentry’s other contentions, which are unlikely to arise on retrial. See Gambrell v. Ravin, 764 P.2d 362, 365 (Colo. App. 1988) (declining to address issues unlikely to arise on retrial), aff’d, 788 P.2d 817 (Colo. 1990). 
11 IV. Disposition ¶ 25 The judgment of conviction is reversed, and the case is remanded for further proceedings. JUDGE GRAHAM and JUDGE RICHMAN concur.